# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

    -vs-                               Case No. 04-CR-56

**RAZA BOKHARI,**

    Defendant.

## DECISION AND ORDER

This matter comes before the Court on Raza Bokhari's motion to dismiss the indictment and to quash the warrant for his arrest. Magistrate Judge Aaron E. Goodstein recommends the denial of this motion. For the reasons that follow, the Court will not adjudicate the merits of Bokhari's motion pursuant to the fugitive disentitlement doctrine.

Bokhari is a United States citizen now living in Pakistan. Bokhari lived and worked in the Eastern District of Wisconsin for at least ten years starting in 1990. Bokhari last visited the U.S. for about two weeks in May-June, 2002. In 2004, Bokhari was indicted on various charges related to the federal E-Rate Program, a program designed to improve internet access for disadvantaged schools. A superseding indictment alleged that Bokhari and his two younger brothers defrauded the E-Rate Program of over $1.2 million dollars. Bokhari's brothers pled guilty on October 22, 2004.

In 2005, the United States commenced extradition proceedings against Bokhari. Pursuant to the applicable extradition treaty,[1] Pakistan appointed an Inquiry Magistrate to oversee the extradition proceedings, and a Pakistani government attorney prosecuted the United States' request. The Inquiry Magistrate found that the prosecution failed to establish a prima facie case against Bokhari. The Pakistani attorney informed the United States that the decision would be appealed, but by all accounts, the decision was never appealed, and the U.S. heard nothing further regarding its request. Pakistan essentially stopped authorizing extraditions to the United States in recent years, so the U.S. has accepted the futility of pursuing extradition any further.

The United States also filed a Red Notice application with Interpol in the event that Bokhari might travel outside of Pakistan. In the fall of 2009, the U.S. learned that its initial Red Notice application was never finalized. Thus, the Red Notice currently in place — effective September 1, 2009 for a period of five years — is an initial Red Notice, not a renewal. The mix-up was inconsequential; Bokhari hasn't left Pakistan since his indictment.

The fugitive disentitlement doctrine stands for the proposition that those who flee from judicial process may not benefit from it. *United States v. Kashamu*, 656 F. Supp. 2d 863, 866 (N.D. Ill. 2009). In the context of a criminal appeal, the Supreme

---

[1] The 1931 Extradition Treaty between the United States and the United Kingdom, Pakistan's former colonial sovereign, continues in force between the United States and Pakistan. *Kasi v. Angelone*, 300 F.3d 487, 493 n.2 (4th Cir. 2002).

Court explained as follows:

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for a determination of his claims.

*Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970). Thus, the doctrine "has come to signify the unwillingness of courts to waste time and resources exercising jurisdiction over litigants who will only comply with favorable rulings of the court." *United States v. Oliveri*, 190 F. Supp. 2d 933, 935 (S.D. Tex. 2001). It is a "discretionary device" that can be used "against individuals who are fugitives from justice." *Gutierrez-Almazan v. Gonzales*, 453 F.3d 956, 957 (7th Cir. 2006). Courts have applied the doctrine, as here, to pretrial motions in criminal cases. *Oliveri* at 936; *Kashamu* at 866-67; *United States v. Eagleson*, 874 F. Supp. 27, 29-31 (D. Mass. 1994).

Judge Goodstein held that *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) "compels" the conclusion that the Court "must consider the merits of Bokhari's motion to dismiss." Aug. 12, 2013 Recommendation at 7. In *Hijazi*, the Seventh Circuit found that the fugitive disentitlement doctrine was not a proper basis for the district court to refuse to rule on a Lebanese citizen/Kuwaiti resident's motion to dismiss. Judge Goodstein reasoned that Bokhari, like Hijazi, "did not flee the United States following an indictment. Rather, Bokhari was already in Pakistan by the time the indictment was returned. Notwithstanding the pendency of criminal charges against him, Bokhari, like

Hijazi, has done all that was legally required of him and thus, Bokhari likely does not fall within the traditional definition of a 'fugitive.'" Recommendation at 6.

To the contrary, the fact that Bokhari was already in Pakistan when he was indicted does not preclude a finding that Bokhari is a fugitive. "Fleeing from justice does not, as the words literally connote, mean a person 'on the run.' . . . Fleeing from justice is not always a physical act; it may be a state of mind. When a person purposely leaves the jurisdiction or decides not to return to it, in order to avoid prosecution, he is a fugitive." *United States v. Eng*, 951 F.2d 461, 464-65 (2d Cir. 1991). In other words, the "intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, 'constructively flees' by deciding not to return." *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984).

In this light, it's easy to see why the fugitive disentitlement doctrine was *prima facie* inapplicable in *Hijazi*. Hijazi wasn't a United States citizen, and with "the exception of one brief visit to the U.S. in 1993, which all agree was unrelated to this case, Hijazi has never been in the country, he has never set foot in Illinois, and he owns no property in the United States." *Hijazi* at 412. Hijazi also surrendered himself to Kuwaiti authorities when he learned of the indictment. "Had those authorities been inclined to detain him and then to turn him over to the U.S. prosecutors, they could

have done so. Or they could have prosecuted him under Kuwaiti law." *Id.* at 412-13. By remaining in Kuwait, Hijazi wasn't "constructively fleeing" by deciding not to appear in the United States; there was nothing in the U.S. to which Hijazi could or would be expected to return. Indeed, Hijazi moved to dismiss the indictment on jurisdictional grounds, "arguing the statutes under which he was charged do not apply, and constitutionally cannot apply, to the conduct of foreign nationals outside the borders of the United States." *Id.* at 405. Thus, Hijazi raised "serious questions about the reach of U.S. law," and it was unclear whether the United States contacts on which the government relied — dealings with a U.S. contractor doing business in Kuwait and a series of emails to U.S.-based e-mail addresses — were "sufficient to support [the] prosecution." *Id.* at 411.

By contrast, as Judge Goodstein acknowledged, there are "significant factual distinctions" between the case at bar and *Hijazi*. "Unlike Hijazi, Bokhari had substantial connections to the United States and this district, most significant of which is the fact that he is a United States citizen. Additionally, he was present in this district for years and it was here that he allegedly engaged in the acts [that] led to the present indictment." Recommendation at 6. The Court would add the following: Bokhari married, and later divorced, a U.S. citizen; Bokhari attended school in the U.S.; Bokhari started, or purchased, several business located in Wisconsin; and even after returning to Pakistan, Bokhari continued to direct the fraudulent conduct, ultimately receiving a large portion of the fraudulently-obtained funds. Also unlike Hijazi,

Bokhari didn't voluntarily surrender upon learning of the indictment. Instead, Bokhari fought extradition from the safety of Pakistan. Accordingly, Bokhari constructively fled, and is fleeing, from prosecution by refusing to return to the United States. Moreover, setting aside the fact that Bokhari was already in Pakistan when he was indicted, it takes little imagination to deduce that Bokhari went to Pakistan in an effort to insulate himself from the possibility of a criminal prosecution. Bokhari should not be allowed to set a criminal plan in motion, leave the country, then attempt to gain a favorable ruling from the security of a foreign country once the U.S. government discovers the fraud. "Litigation entails reciprocal obligations: an appellant (or petitioner) who demands that the United States respect a favorable outcome must ensure that an adverse decision can also be carried out." *Sapoundjiev v. Ashcroft*, 376 F.3d 727, 728 (7th Cir. 2004).

Bokhari's motion to dismiss and to quash the arrest warrant [ECF No. 144] is **DENIED** without prejudice pursuant to the fugitive disentitlement doctrine.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2014.

                                            **BY THE COURT:**

                                            */s/ Rudolph T. Randa*
                                            **HON. RUDOLPH T. RANDA**
                                            **U.S. District Judge**